Ruffin, C. J.
 

 The paper is not propounded as a devise of lands, but simply as a will of personal estate; and the single question in the case is, whether, from the manner in which it was made and in its present form, it can be admitted to probate as a will of the latter kind.
 

 Before the recent statute of 1840, which declares a will of personalty not to bé good unless executed in the manner required as to wills of realty, there was a marked difference between the requisites of those two instruments. A devise being regulated by statute, it must necessarily come up strictly to all the requirements of the Legislature ; and, among them, must be actually signed and also attested or deposited as a.will, so as to shew, in every instance, that the party deceased intended to devise by the particular instrument in its. then slate, as a finished instrument. But testaments existed at the common law, and their validity depended on principles declared by that law, or, rather, by the common law, as a part of the common law administered in peculiar jurisdictions, that is to say, the ecclesiastical courts. And nothing can be mere certain, than that, in those courts, a will of personal property might be good without attestation and without signature, provided it was made to appear by witnesses, or other documents, or by the custody of the paper or other means, that the maker had declared or recognised it to be his will, or shewn his intention that it should operate in its present state, as expressed by his Honor in this case. The paper in all those cases takes effect from what, in the language of the courts, is called publication ; which is some declaration or act of the party, denoting that he had done
 
 *161
 
 with the instrument, and supposed and meant that, if he died then or at any future time, it should pass his Upon the law on- this subject, thus'far, there is an' entire coincidence between the instructions delivered to the jury in this case’, and1 the opinions held by us. But to this particular case that doctrine’ is not very materia!, except for the better Understanding' of the’ peculiar principle, which is- more immediately applicable to it. For it is certain, here, that the ’alleged testator did not deem this á finished paper; But purposed further to execute if, by signing, and having it attest-ted ; and, as he died without doing either, the paper’ is
 
 prima facie
 
 not a will, for want of publication. This deficiency the propounded of the paper'endeavored to supply By proof, that it was written during'the party’s last illness by a friend, read over to the supposed testator, when he had undoubted capacity, and was fully approved by him and left with him, and that' he then said:he would send for two of his neighbors and get them to attest it; and that two days afterwards, he sent for two persons, who went to him some time in the night, and found him ill in bed, but in possession of his mental faculties, and were then told by him, that he wished them to witness this paper as his will; but he said it was then night, and’ he would sign it in the morning, and get them to witness it. During that night the party became suddenly speechless and insensible, and so continued untiL he died, two days afterwards; Upon these facts, his Honor ’delivered it as' his opinion to the' jury, iff substance, that, although the paper contained all' the dispositions the deceased intended to make of his estate, and, therefore, would be a good will of personalty, if the execution of it by signing and attestation, was prevented by the sudden visitation of God; yet, that the voluntary postponement of the execution for convenience or other catisé; not amounting to an unavoidable or over-ruling necessity, ánd the death of the party interposing,'would not constitute such a providential interference or visitation of God,1 as would dispense with the intended completion of the paper. The question brought up by this appeal is, whether this instruction be right or
 
 *162
 
 not. The court has duly considered if, and the result of deliberation is, that in reference to this case, as stated, the latter part of the instruction is erroneous.
 

 H¡s Honor yields, and, undoubtedly, he correctly yields, that this paper, which is complete in all other respects — disposing of all the party’s estate and nominating executors— may be pronounced a will of personalty, notwithstanding the want of execution, provided the execution was prevented by the act of God. In such cases, indeed, it must be clear, that the contents of the paper were perfectly understood, and satisfactory; and that the execution was not postponed from any hesitation upon that head. As Sir JohN Nicholl said, in
 
 Scott
 
 v Rhodes, 1 Phillim. 12, the rule is held strictly and must be applied with firmness, that the proof must also show a continuance of intention to execute, down to the time when the act of God intervened and prevented. But supposing such a continuance of intention, there is no doubt, we think, that a paper may be established, the execution of which was ultimately prevented by the act of God, although the party was not prevented by unavoidable accident or over-ruling necessity, from previously executing it. The question really is not, whether in any case the paper was written, or the party could, speaking physically, have executed it, at an earlier or a later day, as determining in themselves the validity of the instrument, but it is, whether he postponed the execution because he was deliberating — which is the natural presumption, generally — or whether, still intending to execute it, he was, at last, prevented from performing that intention by sudden death, or the act of God, as it is called. If the latter be the truth of the case, the paper is deemed a- will in the law of testaments, without formal execution, upon the principle that the act of God hurteth no man. It being conceded in the reasoning of his Honor, that the deceased adopted the paper fully, when prepared, and that he intended to execute it as his will, up to the time when he last spoke of it, a few hours before his death, we cannot agree that his death, following so suddenly afterwards, did not sufficiently account to the jury for the
 
 *163
 
 want of execution, by attributing it to that cause, namely, his death, and no other. Where the intention to execute brought down so low, almost in
 
 articulo
 
 mortis, and nothing appears to denote a subsequent change of purpose, it furnishes the strongest argument and evidence that the intention lasted as long as life, and that both were terminated by the same event. Upon these grounds, the court dissents from the position, that the execution could not be dispensed with, inasmuch as the deceased had the possession of the paper and the ability to execute it, and without any absolute necessity, but for convenience, postponed the execution to the next morning, the party dying during the night. We think, on the contrary, that it should have been left to the jury upon this evidence, which was very strong, to say whether the party would have executed the paper the next morning, had he lived to that time and been able; and they should have been directed, that, if they so found, and, consequently, that the execution of the paper was prevented by death, then they should pronounce for the paper as a will of personalty.
 

 It will thus be seen, that the difference between the instructions given, and those which this court thinks ought to have been given, turns upon the sense in which the phrase, !! Act of God” is to be received, as applied to questions of this sort. His Honor held, that if the party could have executed the paper, it was not a ease of prevention by the “ Act of God whereas the true meaning seems to be, that, if the party would have executed his will but for death, it is then considered that he was prevented only by death, or, in other words, by the “act of God.” This is very fully stated by the same eminent ecclesiastical Judge, Sir John Nicholl, in
 
 Allen
 
 v Manning, 2 Addams, 490. He says, “ that to constitute a case of prevention by the “ act of God,” it is not necessary that a case of
 
 'physical
 
 prevention should be made out. In the case in question, for instance, it is not necessary to be shown that it was actually, or even morally,
 
 impossible
 
 for the deceased to have gone to Hull’s office on the 12th of December. If the courtis convinced, upon the ev-
 
 *164
 

 l^ence’
 
 that he was prevented from going by extrinsic cir-cnmstanc.es, of such a nature as to render bis failure to keep his engagement with Hull, (to go to 'his office and execute the will) not justly imputable to any
 
 change
 
 of -intention on his part, the exigency of the law, in the particular in question, is fully satisfied. ' I think the fair result of the evidence is, that the deceased
 
 was
 
 solely prevented by the “act of God;” in this sense and construction of the phrase, from executing the will.” Accordingly, there are many cases in which probates ;ha.ve passed, where the party was prevented from executing by death, but
 
 might
 
 ■have easily done it before.
 
 In the goods of Taylor,
 
 1 Hagg, 641, the case was very much the same with the present. A paper was prepared at the testator’s request the day before he died, and while he was very ill, was read over to him, and approved by him-; but he deferred signing-it until the nex-t morning, when he died without having executed it. The court said, “this is an ordinary case of prevention by death
 
 ;
 
 there -was no hesitation as to the contents ; the execution only was postponed until the following morning.” So in the case of
 
 Scott
 
 v
 
 Rhodes,
 
 the court pronounced in favor of a paper,
 
 written
 
 by the testator himself, as supposed on the day before his death, and not executed by reason, as inferred, of his .sudden death that night or early next morning. And in
 
 Allen
 
 v Manning, the paper had b.een written by a solicitor on the 10th of December, and the
 
 testator
 
 appointed
 
 to come
 
 the next day and execute it, but he did not, owing to some slight indisposition, which made it imprudent for him to go out fox-three or four days, and he was then taken violently ill and died on the 16th of December, without executing it. The cases of
 
 Hoby
 
 v
 
 Hoby,
 
 1 Hagg. 146,
 
 and In Re Harvey,
 
 Id.
 
 575,
 
 are yet stronger, because longer time intervened, an.d t.he parties had more opportunities for execution. So the .court thinks it thoroughly settled in the law of
 
 England}
 
 and thence brought as the law of this State, that this paper canno,t be held
 
 not: to be
 
 a will,
 
 merely for
 
 the want of execution under the circumstances stated. .On the contrary, so far as depends on this p.oipt merely, it the jury should think the party would have .executed the paper the next morning,
 
 *165
 
 If God spared his life and senses that long, we think it as much his will, as if he had Used until next morning, and actually signed it.
 

 It was argued at the bar, that although that might be the law in England, yet that, since the jurisdiction is here changed to a common law court and jury, nothing short of publication by execution will sustain even a will of personalty. But we .cannot accede .to the argument; for, although the jurisdiction be changed, the rule of decision is .not-— The canon law is a part of the .common law, so far as respects testamentary causes; and, except such changes as may have been introduced by statutes, we now determine nere, what is or is not a good will of personal property, exactly upon the same principles that prevailed, when the Governor took the probate of wills., or before the ecclesiastical Judge in England,
 

 We feel ourselves therefore compelled to reverse the decision and order a
 
 venire de novo.
 
 But while we do so, we cannot avoid congratulating ourselves and the profession, that we are now happily spared from such difficult diseus-sions, which leave so much in the breast of the judge and jury, by the .ac.t of 1840 ; which requires, in all instances, a plain and unequivocal act of publication, about which there can be no mistake.
 

 Per Curiabí. Judgment reversed and new trial ordered.